UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CODY VINCENT | CIVIL ACTION |
| VERSUS | NO. 14-2885 |
| FIELDWOOD ENERGY, L.L.C. | SECTION A(3) |

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment** (**Rec. Doc. 11**) filed by Defendant Fieldwood Energy, L.L.C. ("Fieldwood"). Plaintiff Cody Vincent opposes the motion. The motion, set for submission on September 9, 2015, is before the Court on the briefs without oral argument. For the following reasons, the motion is **DENIED**.

### I.   Background

Plaintiff Vincent filed suit in this Court on December 18, 2014, asserting tort claims arising out of an incident that occurred at Fieldwood's facilities. (Rec. Doc. 1). Vincent worked for Wood Group PSN, Inc. ("Wood Group"), which is in the business of supplying laborers for work in the oilfield industry. Wood Group assigned Vincent to work in Fieldwood's "Eugene Island Block 120 field" ("EI-120") and Vincent began working there on April 17, 2014. On August 11, 2014, Vincent allegedly sustained injuries when the platform grating collapsed under his feet and caused him to fall into the Gulf of Mexico. Plaintiff then continued working until August 20, 2014, nine days after the incident. (Rec. Doc. 11–5 at 4). This matter is set to be tried to a jury on January 11, 2016.

In the instant motion, Fieldwood moves for summary judgment arguing that it is immune in tort because Vincent was its borrowed employee at the time of his injury. If Vincent was a borrowed employee, his exclusive remedy would be for benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA") rather than for damages in tort.

1

**II.     Law and analysis**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993)).

In *Ruiz v. Shell Oil Co.*, the Fifth Circuit discussed several factors that courts should consider when a defendant asserts the borrowed servant defense. *Ruiz*, 413 F.2d 310, 312–13 (5th Cir.1696). The factors are:

> (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
>
> (2) Whose work is being performed?
>
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
>
> (4) Did the employee acquiesce in the new work situation?
>
> (5) Did the original employer terminate his relationship with the employee?
>
> (6) Who furnished tools and place for performance?

2

>(7) Was the new employment over a considerable length of time?
>
>(8) Who had the right to discharge the employee?
>
>(9) Who had the obligation to pay the employee?

*Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988); *Ruiz*, 413 F.2d at 312–13. No one factor or combination of factors is decisive and no test has been fixed to determine the existence of a borrowed-servant relationship. *Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1488 (5th Cir. 1989) (citing *Alday v. Patterson Truck Line, Inc.*, 750 F.2d 375, 376 (5th Cir. 1985)). Courts generally place the most emphasis, however, on the first factor, control over the employee. *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 617 (5th Cir. 1986) (citing *Ruiz*, 413 F.2d at 312).

**1) Control**

This factor has been considered "the central issue of 'borrowed employee' status." *Melancon*, 834 F.2d at 1244–45. In *Melancon*, the Fifth Circuit found that the corporate defendant "clearly had control" over the plaintiff and his work because the plaintiff took orders only from defendant's personnel "who told him what work to do, and when and where to do it." *Id.* at 1245. The plaintiff's only instructions from his actual employer were to go to the defendant's field and perform the work requested by the defendant's personnel. *Id.*

Similarly, in *Billizon v. Conoco, Inc.*, the Fifth Circuit found that the control factor supported borrowed-employee status. *Billizon*, 993 F.2d 104, 106 (5th Cir. 1993). In *Billizon*, the plaintiff attended daily meetings conducted by an employee of the corporate defendant. *Id.* at 105. The meetings were about safety and work-related issues. *Id.* The court here also noted that no supervisors from the plaintiff's actual employer were in the field to oversee his work. *Id.*

In *Brown v. Union Oil Co. of Cal.*, the Fifth Circuit found an issue of fact regarding control. *Brown*, 984 F. 2d 674, 677 (5th Cir. 1993). In *Brown*, unlike in *Melancon* and *Billizon*, the parties gave conflicting testimony on who instructed the plaintiff on how, where, and when to perform his work. *Id.* The plaintiff said that his actual employer gave him instructions at first and then he worked unsupervised.

*Id.* The evidence further revealed that the plaintiff worked at night, and none of the corporate defendant's employees worked the night shift alongside him. *Id.*

In the instant case, similar to *Billizon*, Vincent attended a daily "safety meeting" run by a Fieldwood employee. (Rec. Doc. 11–5 at 9–10). At these meetings, Vincent would receive his assignments for the day. Vincent agreed in his deposition that he took orders on "what to do and where to go" from Fieldwood personnel. Vincent also said that there was no Wood Group supervisor in the field. These facts weigh heavily in favor of borrowed-employee status.

Despite these strong facts, the Court finds that there is conflicting evidence here. Although contract provisions are typically discussed in conjunction with the third *Ruiz* factor, the Court finds that the contract provision in this case creates uncertainty regarding the control factor. The contract between Fieldwood and Wood Group expressly said that Vincent would not be "deemed to be subject to the control or direction" of Fieldwood as to "the details of the Work." (Rec. Doc. 12–2 at 5). Such an express limitation on Fieldwood's control makes this factor less straightforward than in *Melancon* and *Billizon*. Considering the daily safety meetings and other facts evincing control, juxtaposed with this contract provision expressly limiting Fieldwood's control, there is a factual dispute here. An issue of fact on one *Ruiz* factor, however, does not preclude "borrowed employee" status. *Hotard*, 308 Fed. App'x at 742. The Court will therefore address the remaining factors.

**2) Whose work is being performed**

In a number of cases with similar facts, involving an employer like Wood Group that supplies personnel to work for oil production companies, courts have found that this factor weighs in favor of the corporate defendant. *Melancon*, 834 F.2d at 1245 (finding "no doubt" regarding the second factor, even though the plaintiff's job was only an incidental aspect of the oil company's business); *Hotard v. Devon Energy Prod. Co. L.P.*, 308 Fed. App'x 739, 742 (5th Cir. 2009) (finding that second factor "indisputably" supported borrowed-employee status); *Billizon*, 993 F. 2d at 106. Based on this case law, the Court finds that in the instant case, this factor supports borrowed-employee status.

### 3) Agreement between original and borrowing employer

The Fifth Circuit has held that a contract provision declaring that a plaintiff was not an employee of the alleged borrowing employer, when considered with other facts, can preclude summary judgment. *West*, 765 F.2d at 531. At the same time, "parties to a contract cannot automatically prevent a legal status like 'borrowed employee' from arising merely by saying in a provision in their contract that it cannot arise." *Wood v. Meridian Oil Prod. Inc.*, 199 F.3d 437, 1999 WL 1067545, at *2 (5th Cir. 1999); *see also Brown*, 984 F. 2d at 677–78; *Guilbeau v. Grasso Prod. Mgmt., Inc.*, 73 Fed. App'x 17 (5th Cir. 2003) (affirming summary judgment) ("[The plaintiff] maintains that these companies signed a contract with Union barring a finding of borrowed-employee status. Such a provision does not *per se* bar a finding by the courts of such a status.") "The reality of the worksite and the manner in which the parties carry out a contract can implicitly modify or waive an express provision in a written service contract." *Wood*, 1999 WL 1067545, at *2.

In *Wood*, the parties' contract said that the plaintiff would not be considered an employee of the oil company. *Id.* at *2. The court wrote that this language seemed to foreclose the possibility that the plaintiff was a borrowed employee of Burlington Resources Oil & Gas ("Burlington"). *Id.* However, the court found that "the reality of life on the platform" indicated that the employers had a different understanding. *Id.* "Wood ate and slept with Burlington employees, took his orders from Burlington supervisors, had his time sheets reviewed by Burlington, and never interacted with [his original employer]." *Id.* Ultimately, the court wrote that when all other factors point to borrowed-employee status, summary judgment is appropriate, despite the contract provision. *Id.* at *3.

As in *West* and *Wood*, the language of the parties' contract here seems to foreclose the possibility that Vincent was a borrowed employee. The contract provision here placed an express restriction on Fieldwood's control over Vincent, saying that Vincent would not be "deemed to be subject to the control or direction" of Fieldwood as to "the details of the Work." (Rec. Doc. 12–2 at 5). Based on the "reality of life on the platform" – the fact that Vincent ate and slept on Fieldwood facilities and took orders from Fieldwood supervisors – the parties here may have waived this contractual provision and allowed

Fieldwood to have broad control over Vincent. However, this is a fact-intensive inquiry, and the Court finds that this is an issue of fact to be reserved for a jury, unless the other *Ruiz* factors strongly favor borrowed-employee status.

**4) Acquiescence**

"The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them." *Brown*, 984 F.2d at 678 (citing *Melancon*, 834 F.2d at 1246). In *Brown*, the Fifth Circuit found one month was sufficient to show acquiescence. *Id.* The court wrote the plaintiff worked, slept, and ate in the defendant's field for a month before his accident. *Id.* In *Melancon*, the Fifth Circuit found that the plaintiff "clearly acquiesced in his new situation" because he was aware of the working conditions; he worked there for a number of years and "made no complaint regarding these conditions." *Melancon*, 834 F.2d at 1246. In *Fontenot v. Mobil Oil Exploration & Producing Southeast, Inc.*, the Fifth Circuit said that it considered the "acceptance of a job that regularly sent [the plaintiff] to temporary workplaces as acquiescence to each of those employment situations." *Fontenot*, 997 F.2d 881, 1993 WL 261096, at *3 (5th Cir. 1993). In *Fontenot*, the plaintiff had attended "at least two safety meetings" and had not objected to his new work environment. *Id.*

Here, Vincent worked, slept, and ate offshore at Fieldwood's facilities for four months. (Rec. Doc. 11–5 at 7). During this time, he attended daily meetings and received orders from Fieldwood employees. Vincent argues that he did not acquiesce because, while he was satisfied with his working conditions, he did not consider himself a Fieldwood employee. This, however, is not the focus of this factor. The focus is whether he was aware of the conditions and chose to continue working. Both parties assert that Vincent was satisfied with his working conditions at Fieldwood. (Rec. Doc. 11–2 at 11; Rec. Doc. 12 at 7). Thus, this factor supports borrowed-employee status.

**5) Termination**

This factor focuses on "the lending employer's relationship with the employee while the borrowing occurs." *Capps*, 784 F.2d at 618. The Fifth Circuit has said that this factor does not require complete severance of the relationship; such a requirement would "effectively eliminate the 'borrowed

employee' doctrine." *Melancon*, 834 F.2d at 1246. In *Hotard*, the Fifth Circuit found it sufficient that the plaintiff had no contact with his original employer and was supervised totally by the defendant's employees while on the platform. *Hotard*, 308 Fed. App'x at 742.

Here, as in *Hotard*, Vincent had no supervision from Wood Group while Vincent worked for Fieldwood. Unlike in *Hotard*, however, Vincent had some contact with Wood Group. Vincent asserts that he "frequently spoke with Jonathan Mayer [his Wood Group project manager]." During a 14-day span, the two would talk on "crew change day." (Rec. Doc. 12–3 at 4–5). Vincent also called Mayer a number of times. While this factor does not require "complete severance of the relationship," the Court finds that the nature and extent of the communication between Vincent and Wood Group is not as clear as in *Hotard*. The Court therefore finds an issue of fact on this factor.

**6) Tools and place of performance**

The Fifth Circuit has found that this factor supports borrowed-employee status in the following situations: when the defendant provided the place of performance and the only tool that the plaintiff used (*Capps*, 784 F.2d at 618); when the defendant provided certain consumables, the place of performance, transportation to and from the place, food, and lodging, even though the original employer provided a welding machine and "related equipment" (*Melancon*, 834 F.2d at 1246); and when the defendant provided the workplace, transportation, food, lodging, and most tools, even though the plaintiff brought his own transportable tools such as hard hats (*Hotard*, 308 Fed. App'x at 741). Here, Fieldwood supplied the place of performance, transportation, food, lodging, and all the tools Vincent used to work offshore. In his deposition, Vincent said he only brought a bag of clothes with him. (Rec. Doc. 11–5 at 6–8). This factor therefore weighs in favor of borrowed-employee status.

**7) Length of employment**

The Fifth Circuit has held that "where the length of time is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true." *Capps*, 784 F.2d 618. In *Capps*, the plaintiff's injury occurred on his first day of work, and the Fifth Circuit found that this factor was neutral. Similarly, in *Billizon*, the plaintiff had worked for the oil company for "more than

three months," and the Fifth Circuit found this factor to be neutral. Here, Vincent worked for Fieldwood for four months. The Court finds that this factor is neutral.

   8) **Right to discharge**

Regarding this factor, Vincent argues that Wood Group could reassign Vincent to another oil field company and that Wood Group was the only company that could "fire Plaintiff outright." Vincent argues that while Fieldwood could tell Vincent he was no longer allowed at Fieldwood's facilities, Fieldwood could not terminate Vincent's employment. Vincent correctly asserts that this is identical to the situation in *West*, which found summary judgment inappropriate on the issue of whether the plaintiff was a borrowed employee. *West*, 765 F.2d at 531. In its analysis, the *West* court wrote that "[a]lthough [the defendant] could dismiss [the plaintiff] from the platform, it could not fire him from his position with [his actual employer]." *Id.*

The analysis under this factor has evolved since *West*, however. In *Billizon*, the Fifth Circuit found that the eighth factor did not weigh against borrowed-employee status. *Billizon*, 993 F.2d at 105–106. In *Billizon*, the court emphasized that the borrowing employer could end the plaintiff's association with it, even though it could not end the plaintiff's employment with his original employer. *Id.* In *Hotard*, the court again emphasized that the borrowing employer had the right to discharge the plaintiff from employment on its platform, even if it could not terminate the plaintiff's relationship with his original employer, Wood Group. *Hotard*, 308 Fed. App'x at 743. The court found that this favored borrowed-employee status. *Id.*

Here, the parties do not dispute that Fieldwood could end its relationship with Vincent at any time. Thus, following the Fifth Circuit's reasoning in *Billizon* and *Hotard*, this Court finds that this factor weighs in favor of borrowed-employee status in the instant case.

   9) **Obligation to pay**

The determinative inquiry here is whether the alleged borrowing employer furnished the funds from which the original employer paid the plaintiff. *Melancon*, 834 F. 2d at 1246. In *Brown*, the original employer paid the plaintiff, but his pay was based on time tickets that had to be verified daily by the

alleged borrowing employer. *Brown*, 984 F.2d at 679. The Fifth Circuit wrote that this procedure supports borrowed-employee status. *Id.* Similarly, in *Hotard*, the alleged borrowing employer approved time sheets and paid the original employer an hourly rate for the plaintiff's work, and the original employer issued the plaintiff a check. *Hotard*, 308 Fed. App'x at 739. The Fifth Circuit wrote that this structure regarding the obligation to pay favors borrowed-employee status. *Id.*

Here, deposition testimony establishes that Vincent turned in timesheets to Fieldwood for verification and approval. (Rec. Doc. 11–3 at 3). Wood Group then paid Vincent for hours that were approved, and Wood Group was reimbursed by Fieldwood for the hours worked by Vincent. This structure is the same as those in *Brown* and *Hotard*, so this factor favors borrowed-employee status.

### III. Conclusion

Despite the strength of Fieldwood's position, the Court finds summary judgment is inappropriate at this time. The *Brown* court found that a contract provision, when considered with other facts, precluded summary judgment. *Brown* involved conflicting evidence regarding control, the most central factor in the analysis. In the instant case, there is not only conflicting evidence on control, but on the third and fifth *Ruiz* factors as well.

Accordingly;

**IT IS ORDERED** that **Motion for Summary Judgment (Rec. Doc. 11)** filed by Defendant Fieldwood is **DENIED**.

November 4, 2015

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE